UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

THOMAS M. WILSON SR., and
DANIEL HALSEY as ADMINISRATOR
of the ESTATE OF TAMARA HALSEY, and
JASON GRAZUTIES, and SANDRA SHEPPARD,
and ROBERT BRADLEY, and ARVADA MARTIN,
Individually and on behalf of all others
similarly situated,

            Plaintiffs,

v.                                      Civil Action No. 2:16-5279

MRO CORPORATION, a Pennsylvania Corporation,
and CIOX HEALTH, LLC, a Georgia Corporation,
and MEDI-COPY SERVICES, INC., a Tennessee
Corporation,

            Defendants.


MEMORANDUM OPINION AND ORDER


I. Introduction


        Pending is a motion to dismiss the amended complaint,

filed by defendant Medi-Copy Services, Inc. ("Medi-Copy") on

November 11, 2016.[1]


        Plaintiffs Thomas M. Wilson, Sr., Daniel Halsey as

_____

[1] The motion to compel arbitration and to dismiss the amended
complaint, filed by defendant MRO Corporation ("MRO") on
November 21, 2016 will be resolved in a separate memorandum
opinion and order.

Administrator of the Estate of Tamara Halsey, and Jason Grazuties, individually and on behalf of all others similarly situated, instituted this action against Medi-Copy, MRO and CIOX Health, LLC ("CIOX") by filing a complaint in the Circuit Court of Kanawha County, West Virginia on April 28, 2016. With the consent of CIOX and MRO, Medi-Copy removed the action on June 10, 2016 on the basis of diversity jurisdiction and the Class Action Fairness Act of 2005.

Plaintiffs filed a motion to amend the complaint to add Sandra Sheppard, Robert Bradley, and Arvada Martin as additional class representatives on September 23, 2016, which the court granted on October 7, 2016. Medi-Copy thereafter filed the pending motion to dismiss.

The amended complaint alleges that defendants, who are providers of patient health care records, charge patients more for their heath care records than is permitted under West Virginia law. Amended Compl. at ¶¶ 1-3. Specifically, plaintiffs allege that defendants improperly billed and produced paper copies of their medical records when the records were stored electronically and when plaintiffs requested copies of the records in electronic form and that they charge far in excess of "the actual cost of labor, supplies, and postage

involved in providing copies of medical records to patients, including Plaintiffs and others." Id. at ¶¶ 3, 26.

This case arises under the Health Care Records Statute, contained in W. Va. Code §§ 16-29-1 and 16-29-2, which prescribes that "[a]ny licensed . . . health care provider . . . shall, upon the written request of a patient, his or her authorized agent or authorized representative, within a reasonable time, furnish a copy . . . of all or a portion of the patient's record to the patient, his or her authorized agent or authorized representative. . . ." W. Va. Code § 16-29-1(a). Section 16-29-1(d) states that [t]he provisions of this article may be enforced by a patient, authorized agent or authorized representative. . . ." W. Va. Code § 16-29-1(d).

Plaintiffs state that MRO, Medi-Copy and CIOX have entered into contracts with hospitals and other healthcare providers in West Virginia in order to provide medical records to patients and others on behalf of patients. Id. at ¶ 14. Pertaining to Medi-Copy, the amended complaint alleges that on September 30, 2014, Jason Grazuties, "though his representatives," requested his medical records in electronic form from the hospital, Logan Regional Medical Center. Id. at ¶ 31. His counsel received an invoice from Medi-Copy dated

October 3, 2014, which included charges that exceeded those permitted by law. Id. On November 23, 2015, Arvada Martin, "through her representatives," requested her medical records in electronic form from the health care provider, Valley Health.[2] Id. at ¶ 32. Her counsel received an invoice from Medi-Copy dated December 4, 2015, which included charges that exceeded those permitted by law. Id. Plaintiffs allege that Medi-Copy failed to comply with requests for electronic records. Id. at ¶ 33.[3] The amended complaint further alleges that defendant has overcharged other patients as well. Id. at ¶ 35.

Plaintiffs bring this case as a class action on behalf of those "who are patients of health care providers, or designated representatives of patients of health care providers, who Defendants charged an amount in excess of that allowed by law for copies of medical records when they requested electronic

---

[2] The amended complaint states, likely erroneously, that the representatives of Ms. Martin requested her medical records on November 23, 2016. The amended complaint was filed prior to that date so that the reference must have been to November 23, 2015. See Amended Compl. at ¶ 32.

[3] The amended complaint also contains allegations that relate to plaintiffs Thomas Wilson, Sr., Sandra Sheppard, Daniel Halsey as Administrator of the Estate of Tamara Halsey and Robert Bradley. See Amended Compl. at ¶¶ 27-30. Because the amended complaint alleges that these plaintiffs received medical records from MRO and CIOX, they are not relevant to Medi-Copy's pending motion, and will not be discussed herein.

medical records be produced on electronic media, individually or through another person acting on their behalf, from West Virginia hospitals and other health care providers that contract with Defendants to produce medical records." Id. Plaintiffs allege that the class may consist of thousands of people, making joinder impracticable, and that there are common questions of law and fact applicable to all class members. Id. at ¶ 37. They further allege that their claims are typical and that they are adequate representatives of the class. Id. at ¶¶ 38-39.

Count one alleges that defendants violated the West Virginia Consumer Credit and Protection Act ("WVCCPA"), W. Va. Code § 46A-6-101 et seq., by charging fees in excess of a reasonable fee for the production of medical records in electronic form. Id. at ¶¶ 42-44. Specifically, it states that defendants' policies and practices of charging "per page rates and other charges for copies of medical records [that] exceed the labor and supply cost of responding to requests for copies violates the WVCCPA as an unfair or deceptive act or practice pursuant to W. Va. Code §§ 46A-6-104 and 46A-6-102." Id. at ¶ 45. In addition, plaintiffs state that defendants' policy of charging some people higher amounts for copies of medical records than they may charge others is an unfair or deceptive

act or practice.  Id. at ¶ 46.  Plaintiffs also allege that

defendants' failure to inform consumers that they are entitled

to receive electronic medical records at a lower cost

constitutes "a failure to state a material fact that misleads

the public."  Id. at ¶ 47.  Plaintiffs state that "[t]he charges

posed by the Defendants violate the WVCCPA and, further, violate

the limitations on charges for medical records as set forth in

HIPPA, the HITECH Act, West Virginia statute and related state

and federal regulations."[4]  Id. at ¶ 48.

Count two alleges that defendants violated the Health

Care Records Statute, W. Va. Code § 16-29-2, by charging

plaintiffs and others in excess of their labor and supply costs

for their electronic medical records, resulting in fees that are

not reasonable.  Id. at ¶¶ 50, 53.  In addition, defendants did

not inform consumers or their representatives that they are

entitled to an electronic copy of their medical records at a

lower cost, which plaintiffs allege constitutes "a failure to

state a material fact that intends to mislead and violates West

---

[4] Although Count one alleges that defendants' actions violated
HIPPA and HITECH in addition to the WVCCPA, and elsewhere in the
amended complaint are allegations that defendants violated
federal law, it appears that plaintiffs' claims contained in the
amended complaint are only pursuant to West Virginia, not
federal, law.

Virginia statute." <u>Id.</u> at ¶ 54.

Plaintiffs ask for this matter to be certified as a class action, award judgment in their favor, including injunctive relief that prohibits excessive and unlawful charges, equitable relief that includes restitution and disgorgement of moneys obtained from overcharges, recovery of excess charges, civil penalties for violations of the WVCCPA, pre-judgment and post-judgment interest, costs, attorneys fees, statutory interest, punitive damages, and all other relief the court deems appropriate. <u>Id.</u> at p. 12.

In its motion to dismiss the amended complaint, Medi-Copy concedes that it is "a company that specializes in providing health information management services." Medi-Copy's Memo. in Supp. of Mot. to Dismiss Amended Compl. at 3. According to Medi-Copy, it "fulfilled request for medical records made to Logan Regional Medical Center at the time Mr. Grazuties records were requested. . . . [and] also fulfilled requests for medical records made to Valley Health at the time Ms. Martin's records were requested." <u>Id.</u> Despite this, Medi-Copy argues that plaintiffs have failed to plead a cognizable injury in fact and additionally contends that the WVCCPA and Health Care Records Statute do not cover plaintiffs' claims so

that they therefore lack standing to bring their claims,
pursuant to Fed. R. Civ. P. 12(b)(1).  Id. at 4, 7-9.  The court
will address each of these arguments in turn.

## II.  Rule 12(b)(1)

Federal district courts are courts of limited subject
matter jurisdiction, possessing "only the jurisdiction
authorized them by the United States Constitution and by federal
statute."  United States ex. rel. Vuyyuru v. Jadhav, 555 F.3d
337, 347 (4th Cir. 2008).  As such, "there is no presumption
that the court has jurisdiction."  Pinkley, Inc. v. City of
Frederick, 191 F.3d 394, 399 (4th Cir. 1999) (citing Lehigh
Mining & Mfg. Co. v. Kelly, 160 U.S. 327, 327 (1895)).  Indeed,
when the existence of subject matter jurisdiction is challenged
under Rule 12(b)(1), "[t]he plaintiff has the burden of proving
that subject matter jurisdiction exists."  Evans v. B.F. Perkins
Co., 166 F.3d 642, 647 (4th Cir. 1999); see also Richmond,
Fredericksburg, & Potomac R .R. Co. v. United States, 945 F.2d
765, 768 (4th Cir. 1991).  If subject matter jurisdiction is
lacking, the claim must be dismissed.  See Arbaugh v. Y & H
Corp., 546 U.S. 500, 506 (2006).

Subject matter jurisdiction may be attacked by a

8

defendant with either a facial or a factual challenge.  <u>Kerns v.
United States</u>, 585 F.3d 188, 192 (4th Cir. 2009).  In a facial
challenge, the defendant is asserting that the allegations
contained in the complaint fail to sufficiently establish the
existence of subject matter jurisdiction.  <u>Id.</u>  In a facial
attack, the plaintiff is "afforded the same procedural
protection as she would receive under a Rule 12(b)(6)
consideration," so that "facts alleged in the complaint are
taken as true," and the defendant's motion "must be denied if
the complaint alleges sufficient facts to invoke subject matter
jurisdiction."  <u>Id.</u>  In a factual challenge, a defendant may
argue "that the jurisdictional allegations of the complaint
[are] not true."  <u>Id.</u>  This permits a trial court to consider
extrinsic evidence or hold an evidentiary hearing to "determine
if there are facts to support the jurisdictional allegations."
<u>Id.</u>

### III. Standing

Medi-Copy argues that plaintiffs lack standing to
bring their claims for two reasons.  First, it contends that
because the law firm Tiano O'Dell PLLC requested and paid for
plaintiffs' medical records, it is Tiano O'Dell, not plaintiffs
themselves, who suffered an injury from any alleged overbilling

by them.  Medi-Copy's Memo. in Supp. of Mot. to Dismiss Amended

Compl. at 5-6.  Second, Medi-Copy states that the West Virginia

Consumer Credit and Protection Act ("WVCCPA") and the Health

Care Records Statute do not govern the transactions alleged in

the amended complaint.  Id. at 7-9.  As these are facial and not

factual challenges to plaintiffs' standing, the court will

accept all allegations in the amended complaint as true and

determine whether plaintiffs have sufficiently established a

basis for subject matter jurisdiction.  See Kerns, 585 F.3d at

192.

## A. Applicable Law

Standing is generally addressed at the motion to

dismiss stage under Fed. R. Civ. P. 12(b)(1) because "Article

III gives federal courts jurisdiction only over cases and

controversies and standing is a integral component of the case

or controversy requirement."  CGM, LLC v. BellSouth

Telecommunications, Inc., 664 F.3d 46, 52 (4th Cir. 2011)

(internal citations and quotations omitted).  "To satisfy the

constitutional standing requirement, a plaintiff must provide

evidence to support the conclusion that: (1) 'the plaintiff ...

suffered an injury in fact — an invasion of a legally protected

interest which is (a) concrete and particularized, and (b)

actual or imminent, not conjectural or hypothetical'; (2) 'there [is] a causal connection between the injury and the conduct complained of'; and (3) 'it [is] likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'" White Tail Park, Inc. v. Stroube, 413 F.3d 451, 458 (4th Cir. 2005) (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-62 (1992).

At the motion to dismiss stage, "general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim." Lujan, 504 U.S. at 561. The court may accept as true allegations that are supported by adequate "'factual matter' to render them 'plausible on [their] face.'" Beck v. McDonald, 848 F.3d 262, 270 (4th Cir. 2017) (citing Ashcroft, 556 U.S. 662, 678 (2009). "The same presumption of truth" does not apply to "conclusory statements and legal conclusions" contained in the complaint. Id.

## B. Injury In Fact

Medi-Copy contends that because the amended complaint alleges that plaintiffs requested their medical records "through

[their] representatives" and because Tiano O'Dell, not plaintiffs, paid for plaintiffs' medical records, they have not suffered an injury in fact by their alleged overbilling. Medi-Copy's Memo. in Supp. of Mot. to Dismiss Amended Compl. at 5-6.

In response, plaintiffs argue that while persons at Tiano O'Dell requested and paid for plaintiffs' medical records, plaintiffs, who were clients of Tiano O'Dell, executed Fee Agreements, which obligated plaintiffs to reimburse "all costs and expenses incurred in and about the institution and prosecution of said suit or claim . . . and shall be deducted after the contingency fee is calculated." Pls.' Resp. to Medi-Copy at 4-5. Plaintiffs contend that because they are obligated to reimburse Tiano O'Dell, and in fact, Mr. Grazuties and Ms. Martin have already reimbursed the firm, they have standing to challenge the alleged overbilling by defendants. Id.

Medi-Copy's reply states that despite plaintiffs' assertions, the amended complaint contains no allegations that plaintiffs were required to reimburse Tiano O'Dell for these expenses. Medi-Copy's Memo. in Supp. of Mot. to Dismiss Amended Compl. at 5-6. In support of the position that the amended complaint does not adequately allege an injury in fact, Medi-Copy cites to <u>Spiro v. Healthport Technologies, LLC</u>. 73 F.

Supp. 3d 259 (S.D.N.Y. 2014). In <u>Spiro</u>, the court found that plaintiffs, who were individuals alleging that defendants overcharged them for their medical records under New York law, did not have standing to pursue their claims because as written, the complaint did not allege that plaintiffs were obligated to reimburse their attorney, who originally requested and paid for the records. <u>Id.</u> at 268. The court dismissed the case for lack of jurisdiction, expressly permitting plaintiffs to amend the complaint to state that under the fee agreement executed by plaintiffs with their attorney, they were obligated to reimburse the medical record fees charged by defendants. <u>Id.</u> at 269.

Plaintiffs argue that <u>Carter v. HealthPort Technologies, LLC</u>, is more relevant to this case. 822 F.3d 47 (2d Cir. 2016). In <u>Carter</u>, plaintiffs similarly sued defendants, who they alleged overbilled them for their medical records in violation of state law. <u>Id.</u> at 52. The complaint alleged that each plaintiff, "through [her or his] counsel, . . . requested medical records from" the treating hospital. <u>Id.</u> at 52 (internal quotations omitted). The complaint further alleged that each plaintiff paid the charge provided by defendants "though [his or her] counsel." <u>Id.</u>

The Second Circuit determined that the district court

13

erred in finding that the plaintiffs lacked standing based on the allegations contained in the complaint. Id. at 58. The court found that the allegations that the plaintiffs requested and paid for their medical records through his or her counsel "are detailed factual allegations that the plaintiffs were the principals, who acted through their agents in requesting and paying for the records." Id. Combined with the factual allegation that "the ultimate expense" for the records was borne by "Plaintiffs and other Class members," the court found that the complaint described the agency relationships between the plaintiffs and their attorney so that each plaintiff acted "through [his or her] counsel" in requesting and paying the fees demanded in exchange for providing the medical records, and that plaintiffs bore the "ultimate" expense. Id. Based on these allegations, the court found that the complaint "sufficiently alleged that it [was] the client[s] who w[ere] injured." Id. at 58-59.

In the amended complaint, it is individually alleged that each of the named plaintiffs "through [his or her] representatives requested" his or her medical records. Amended Compl. at ¶¶ 27, 28, 28, 29, 31, 32. It is further alleged "Plaintiff's counsel received an invoice" from Medi-Copy. Id.

**14**

For example, as to Jason Grazuties, it is alleged that,

> On September 30, 2014, Jason Grazuties, through his
> representatives, requested a copy of his medical records in
> electronic form from Logan Regional Medical Center.
> Plaintiff's counsel received an invoice from Medi-Copy
> Services, Inc., dated October 3, 2014.  The charges exceed
> those permitted by law.

Id. at ¶ 31.  The amended complaint additionally states,

"Defendants have overcharged Plaintiffs and systematically

overcharge other patients who seek their protected health

information" and it characterizes the actions of defendants as a

"systematic assessment and collection of improper and excessive

charges that Plaintiffs and others paid for copies of personal

medical records."  Id. at ¶¶ 34, 1.

Medi-Copy included as exhibits with its motion to

dismiss, invoices that show that Tiano O'Dell requested and paid

for plaintiffs' medical records.  See Exhibits A-C to Medi-

Copy's Motion to Dismiss the Amended Complaint.  These documents

support the claims in the amended complaint that plaintiffs

requested their medical records through their representatives,

persons at Tiano O'Dell, and that plaintiffs' counsel received

an invoice for each record request.  The invoices attached to

the amended complaint additionally show that an employee of

Tiano O'Dell requested the medical records.  See ECF Doc. Nos.

38-1, 2, & 3.  Because the allegations contained in Medi-Copy's
exhibits do not factually attack the allegations in the amended
complaint, the court may not consider evidence outside of the
pleadings in making the determination whether plaintiffs have
alleged an injury in fact.  See Kerns, 585 F.3d at 192.

When combined with the assertions in the amended
complaint that plaintiffs were overcharged by Medi-Copy and that
plaintiffs "paid for copies of personal medical records," the
complaint sufficiently alleges an agency relationship whereby
each plaintiff acted through their counsel to request and pay
for their medical records.  See Carter, 822 F.3d at 58-59.
Moreover, because the amended complaint states that it was the
plaintiffs who were overcharged for the records, it sufficiently
alleges that plaintiffs have or will ultimately bear the cost of
the charges, as in Carter.  See Amended Compl. at ¶¶ 1, 4, 26;
see also Carter, 822 F.3d at 58.  Accordingly, plaintiffs have
adequately pled an injury in fact as a result of the alleged
overbilling.[5]

_____

[5] Although plaintiffs have a contingency agreement with Tiano
O'Dell, so that they will only reimburse the law firm for copies
of their medical records if they are successful in litigation,
this interest, although somewhat uncertain, creates a present
injury to plaintiffs.  See, e.g., Clinton v. City of New York,
524 U.S. 417, 418 (1998) (finding that New York City had

Medi-Copy also states that it has reimbursed Tiano O'Dell for any alleged overcharge for Mr. Grazuties' medical records. Medi-Copy Memo. in Supp. of Mot. to Dismiss Amended Compl. at 6. In addition, since June 30, 2015, it "has implemented a cost-based fee for production of medical records requested from Logan Regional Medical Center. It is under this cost-based fee schedule that Ms. Martin's attorney was invoiced for the production of her records." Id. at 6-7. Because of this, Medi-Copy contends, "Mr. Grazuties and Ms. Martin have suffered no damages." Id. at 7.

Plaintiffs respond that despite the refund issued by Medi-Copy, plaintiffs were still charged in excess of a reasonable, cost-based fee for copies of their medical records. Pls.' Resp. to Medi-Copy at 5. Plaintiffs also assert, "Medi-Copy's revised billing . . . still exceeds the state and federally permitted charge for electronic medical records." Id.

_____

standing to challenge the line item veto because, as a result of its use, the state "now has a multibillion dollar contingent liability that had been eliminated" prior to the exercise of the line item veto so that the state and New York City "suffered an immediate, concrete injury the moment the President canceled the section and deprived them of its benefits."); see also Spiro, 73 F. Supp. 3d at 269 (explaining that a contingency agreement that required the plaintiffs to repay fees for copies of medical records if their cases were successful sufficiently establishes an injury in fact).

Although the parties appear to dispute whether or not plaintiffs suffered any injury due to refund and revised billing by Medi-Copy, at the pleading stage, plaintiffs' allegations that Medi-Copy's charges are in excess of those permitted under the law are also sufficient to state an injury in fact.

### C. Plaintiffs' Claims Governed by the Relevant Statutes

#### a. West Virginia Consumer Credit and Protection Act

Medi-Copy insists that plaintiffs may not bring a claim under the WVCCPA because persons at Tiano O'Dell requested plaintiffs' medical records on their behalf for the purposes of initiating litigation, which, it says, is not a consumer transaction as defined in the WVCCAP.  Medi-Copy's Memo. in Supp. of Mot. to Dismiss Amended Compl. at 8.  Medi-Copy cites to Any Occasion, LLC and Janice Hicks v. Florists' Transworld Delivery, Inc., for the proposition that only natural persons engaged in consumer transactions may file a claim for unfair and deceptive acts and practices under section 46A-6-106(a).  No. 5:10-44, 2010 WL 3584411 (N.D.W.Va. Sept. 13, 2010); Medi-Copy's Memo. in Supp. of Mot. to Dismiss Amended Compl. at 8, n. 2.  As noted below, the language of section 46A-6-106(a) does not support this argument.

Plaintiffs claim that defendants' actions in overcharging them for their medical records and failing to inform them that they were statutorily obligated to provide the records at a lower cost constitutes unlawful acts or practices under 46A-6-104 of the West Virginia Consumer Credit and Protection Act. Amended Compl. at ¶¶ 42-48. Because a plaintiff alleging a violation of this provision need not be a consumer or engaged in consumer transactions, the court need not reach the question of whether requesting medical records for potential litigation constitutes a consumer transaction under the WVCCPA.

W. Va. Code § 46A-6-104 states, "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." W. Va. Code § 46A-6-104. Section 46A-6-106 provides that ". . . any <u>person</u> who purchases . . . goods or services and thereby suffers an ascertainable loss of money . . . as a result of the use or employment by another person of a method, act or practice prohibited or declared to be unlawful by the provisions of this article may bring an action in [] circuit court. . . ." W. Va. Code § 46A-6-106(a) (emphasis added). "Person," as defined in section 46A-1-102(31) includes "a natural person or an

individual, and an organization."  W. Va. Code § 46A-1-102(31).

Nowhere in these provisions does it state that only consumers

may bring such claims or that they must involve consumer

transactions.[6]  See generally section 46A-6-106 (referring to one

with a private cause of action as "a person" and "the person").

While a previous version of section 46A-6-106 included

references to "consumer," section 46A-6-106(a) has always stated

that "[a]ny person" has a cause of action under this provision.

The new version of section 46A-6-106 became effective on June

12, 2015, and replaced all references to "consumer" with

"person," making it uniform with section 46A-6-106(a).  See

Midwestern Midget Football Club Inc. v. Riddell, Inc., No. 2:15-

00244, 2015 WL 4727438 (S.D.W.Va. Aug. 10, 2015) (detailing the

2015 changes to section 46A-6-106 and concluding that under the

previous version of the provision that a plaintiff need only be

---

[6] Medi-Copy's assertion that plaintiffs must be involved in
consumer transactions in order to state a claim under section
46A-6-104 is rooted in the definition of "consumer" which is
defined for purposes of this provision as "a natural person to
whom a sale or lease is made in a consumer transaction."  W. Va.
Code § 46A-6-102(2).  "Consumer transaction" is further defined
as "a sale or lease to a natural person or persons for a
personal, family, household or agricultural purpose."  Id.
Because, as discussed below, "consumer" does not appear in the
text of section 46A-6-104(a), plaintiffs need not be involved in
consumer transactions in order to bring a claim under this
provision.

a person and not a consumer to bring a claim).  Inasmuch as plaintiffs, as natural persons, are plainly persons, they satisfy the standing requirement regardless of whether they are consumers or were engaged in consumer transactions in requesting their medical records through Tiano O'Dell.

### b.  Health Care Records Statute

Medi-Copy next claims that the Health Care Records Statute does not govern Count two of plaintiffs' amended complaint because persons at Tiano O'Dell, and not the plaintiffs themselves, requested and paid for the medical records that defendants allegedly overbilled.  Medi-Copy's Memo. in Supp. of Mot. to Dismiss Amended Compl. at 8-9.  According to Medi-Copy, because Tiano O'Dell, a third party, requested the records, plaintiffs "have failed to plead sufficient facts to show the pricing scheme in the Health Care Records statute is applicable."  Id. at 9.

Plaintiffs respond that Tiano O'Dell, the law firm representing them and Mr. O'Dell as their attorney, qualify as "authorized agents" or "authorized representatives" under the statute and thus were permitted to request medical records on their behalf.  Pls.' Resp. to Medi-Copy at 4.  In reply, Medi-

Copy asserts that "[t]hough the statute states that the patient's authorized agent or authorized representative may enforce the statute, it does not state that a patient who has not been injured may enforce the statute, whether directly or through their authorized agent or representative." Medi-Copy's Reply at 3.

As earlier noted, the Health Care Records Statute, contained in W. Va. Code §§ 16-29-1 and 16-29-2, states that "[a]ny licensed . . . health care provider . . . shall, upon the written request of a patient, his or her authorized agent or authorized representative, within a reasonable time, furnish a copy . . . of all or a portion of the patient's record to the patient, his or her authorized agent or authorized representative. . . ." W. Va. Code § 16-29-1(a). Section 16-29-1(d) states that [t]he provisions of this article may be enforced by a patient, authorized agent or authorized representative. . . ." W. Va. Code § 16-29-1(d).

"Authorized agent" is not defined within the Health Care Records Statute. In the briefing on the motion to dismiss the amended complaint, plaintiffs clarify that someone at Tiano O'Dell, acting as plaintiffs' attorney, requested the medical records for litigation purposes. Pls.' Resp. to Medi-Copy at 4-

5.  An agent is "[s]omeone who is authorized to act for or in place of another; a representative."  AGENT, Black's Law Dictionary (10th ed. 2014).  In response to the motion to dismiss, plaintiffs provided copies of the requests for medical records sent to Medi-Copy, which include an "Authorization to Disclose Health Information" signed by plaintiffs, authorizing their medical records to be provided to Tiano O'Dell.  Exhibits 1-10 to Pls.' Resp. to Medi-Copy.[7]  As previously discussed, the amended complaint adequately alleges that plaintiffs suffered an injury in fact by requesting and paying for copies of their medical records through their agent, the law firm Tiano O'Dell.  See Amended Compl. at ¶¶ 31, 32.  Attorneys at Tiano O'Dell, who were authorized by plaintiffs to obtain their medical records and who were acting on their behalf for the purposes of instituting legal proceedings, qualify as plaintiffs' authorized

_____

[7] Although the documents which plaintiffs cite in their response to the motions to dismiss were not attached as exhibits in their amended complaint, the court has already determined that it can be inferred from the complaint that lawyers at Tiano O'Dell were acting as agents to request medical records for plaintiffs, clients of Tiano O'Dell.  Furthermore, as plaintiffs note, under federal health care privacy laws, a member of Tiano O'Dell would not be permitted to access plaintiffs' medical records without authorizations from plaintiffs.  Medi-Copy is unable to explain how a representative of Tiano O'Dell would have access to plaintiffs' medical records as a "third-party requester" without this requisite authorization.

agents.

Medi-Copy additionally argues that because Tiano
O'Dell requested plaintiffs' medical records for litigation
purposes, section 16-29-1(c) precludes their claim under the
Health Care Records Statute.  Medi-Copy Memo. in Supp. of Mot.
to Dismiss Amended Compl. at 9.

Section 16-29-1(c) provides, "This article does not
apply to records subpoenaed or otherwise requested through court
process."  W. Va. Code § 16-29-1(c).  Medi-Copy contends, "the
record requests at issue were related to court process in that
the requests are related to litigation."  Medi-Copy Memo. in
Supp. of Mot. to Dismiss Amended Compl. at 9.  Medi-Copy
concludes that plaintiffs "lack standing because the requests
made by Tiano O'Dell were made in connection with litigation and
not for medical purposes making the statute . . . inapplicable
to their claims."  Id.

Section 16-29-1(c) does not contain, as Medi-Copy
suggests, language that supports the conclusion that the statute
is inapplicable unless the medical records are requested for
"medical purposes."  In this instance, plaintiffs' medical
records clearly were not subpoenaed, requested through

discovery, or any other mechanism that involved the court, but were requested by their authorized agent pursuant to section 16-29-1(a). Medi-Copy's interpretation of this section is not consistent with its plain language.

Moreover, Medi-Copy's reading is contrary to other provisions in the Health Care Records Statute. For example, section 16-29-2(c) provides a mechanism for indigent persons to receive a free copy of their medical records if they "are necessary for the purpose of supporting a claim or appeal under any provisions of the Social Security Act." W. Va. Code § 16-29-2(c). Medi-Copy does not explain why an indigent person may access free copies of their medical records for a social security claim, which is not a medical purpose, but plaintiffs are otherwise barred by section 16-29-1(c) from obtaining copies of their medical records for a reasonable cost-based fee if they are accessing them for litigation purposes.

The court concludes that the plain language of section 16-29-1(c) as well as a reading of the other provisions in the Health Care Records Statute does not support Medi-Copy's argument. Accordingly, the court finds that the Health Care Records Statute applies to plaintiffs' claims.

### IV.    Conclusion

For the foregoing reasons, it is ORDERED that Medi-Copy's motion to dismiss the amended complaint be, and it hereby is, denied.

The Clerk is directed to transmit copies of this order to counsel of record and any unrepresented parties.

DATED:   April 27, 2017

John T. Copenhaver, Jr.
United States District Judge