UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

THOMAS M. WILSON SR., and
DANIEL HALSEY as ADMINISRATOR
of the ESTATE OF TAMARA HALSEY, and
JASON GRAZUTIES, and SANDRA SHEPPARD,
and ROBERT BRADLEY, and ARVADA MARTIN,
Individually and on behalf of all others
similarly situated,

          Plaintiffs,


v.                                    Civil Action No. 2:16-5279


MRO CORPORATION, a Pennsylvania Corporation,
and CIOX HEALTH, LLC, a Georgia Corporation,
and MEDI-COPY SERVICES, INC., a Tennessee
Corporation,

          Defendants.


MEMORANDUM OPINION AND ORDER


I.    Introduction


        Pending is a motion to dismiss the amended complaint

and compel arbitration, filed by defendant MRO Corporation

("MRO") on November 21, 2016.  This opinion and order addresses

the motion only insofar as it relates to standing and seeks to

compel arbitration.


        Plaintiffs Thomas M. Wilson, Sr., Daniel Halsey as

Administrator of the Estate of Tamara Halsey, and Jason

Grazuties, individually and on behalf of all others similarly situated, instituted this action against MRO, Medi-Copy Services, Inc. ("Medi-Copy") and CIOX Health, LLC ("CIOX") by filing a complaint in the Circuit Court of Kanawha County, West Virginia on April 28, 2016.  With the consent of CIOX and MRO, Medi-Copy removed the action on June 10, 2016 on the basis of diversity jurisdiction and the Class Action Fairness Act of 2005.

Plaintiffs filed a motion to amend the complaint to add Sandra Sheppard, Robert Bradley, and Arvada Martin as additional class representatives on September 23, 2016, which the court granted on October 7, 2016.  MRO thereafter filed the pending motion.

The amended complaint alleges that defendants, who are providers of patient health care records, charge patients more for their heath care records than is permitted under West Virginia law.  Amended Compl. at ¶¶ 1-3.  Specifically, plaintiffs allege that defendants improperly billed and produced paper copies of their medical records when the records were stored electronically and when plaintiffs requested copies of the records in electronic form and that they charge far in excess of "the actual cost of labor, supplies, and postage

2

involved in providing copies of medical records to patients, including Plaintiffs and others." Id. at ¶¶ 3, 26.

This case arises under the Health Care Records Statute, contained in W. Va. Code §§ 16-29-1 and 16-29-2, which prescribes that "[a]ny licensed . . . health care provider . . . shall, upon the written request of a patient, his or her authorized agent or authorized representative, within a reasonable time, furnish a copy . . . of all or a portion of the patient's record to the patient, his or her authorized agent or authorized representative. . . ." W. Va. Code § 16-29-1(a). Section 16-29-1(d) states that [t]he provisions of this article may be enforced by a patient, authorized agent or authorized representative. . . ." W. Va. Code § 16-29-1(d).

Plaintiffs state that hospitals and other health care providers have "executed associate business agreements" with MRO, Medi-Copy and CIOX "to produce patient medical records" on behalf of the hospitals and health care providers. Amended Compl. at ¶ 52; see also Amended Compl. at ¶ 14. Pertaining to MRO, the amended complaint alleges that on "February 3, 2016, Thomas Wilson, Sr. through his representatives requested a copy of his medical records in electronic form from Cabell Huntington Hospital." Id. at ¶ 27. His counsel "received an invoice from

3

MRO dated March 7, 2016," which included charges that exceeded those permitted by law.  Id.  On April 26, 2016, Sandra Sheppard, "through her representatives requested her medical records in electronic form from Cabell Huntington Hospital." Id. at ¶ 28.  Her counsel received an invoice from MRO dated May 23, 2016, which included charges that exceeded those permitted by law.  Id.  Plaintiffs allege that MRO failed to comply with requests for electronic records.  Id. at ¶ 27.[1]  The amended complaint further alleges that MRO has overcharged other patients as well.  Id. at ¶ 35.

Plaintiffs bring this case as a class action on behalf of those "who are patients of health care providers, or designated representatives of patients of health care providers, who Defendants charged an amount in excess of that allowed by law for copies of medical records when they requested electronic medical records be produced on electronic media, individually or through another person acting on their behalf, from West Virginia hospitals and other health care providers that contract

---

[1] The amended complaint also contains allegations that relate to plaintiffs Jason Grazuties, Arvarda Martin, Daniel Halsey as Administrator of the Estate of Tamara Halsey and Robert Bradley. See Amended Compl. at ¶¶ 27-28, 30-31.  Because the amended complaint alleges that these plaintiffs received medical records from Medi-Copy and CIOX, they are not relevant to MRO's pending motion, and will not be discussed herein.

with Defendants to produce medical records." Id. Plaintiffs
allege that the class may consist of thousands of people, making
joinder impracticable, and that there are common questions of
law and fact applicable to all class members. Id. at ¶ 37.
They further allege that their claims are typical and that they
are adequate representatives of the class. Id. at ¶¶ 38-39.

Count One alleges that defendants violated the West
Virginia Consumer Credit and Protection Act ("WVCCPA"), W. Va.
Code § 46A-6-101 et seq., by charging fees in excess of a
reasonable fee for the production of medical records in
electronic form. Id. at ¶¶ 42-44. Specifically, it states that
defendants' policies and practices of charging "per page rates
and other charges for copies of medical records [that] exceed
the labor and supply cost of responding to requests for copies
violates the WVCCPA as an unfair or deceptive act or practice
pursuant to W. Va. Code §§ 46A-6-104 and 46A-6-102." Id. at ¶
45. In addition, plaintiffs allege that defendants' policy of
charging some people higher amounts for copies of medical
records than they may charge others is an unfair or deceptive
act or practice. Id. at ¶ 46. Plaintiffs also allege that
defendants' failure to inform consumers that they are entitled
to receive electronic medical records at a lower cost

5

constitutes "a failure to state a material fact that misleads the public." Id. at ¶ 47. Plaintiffs claim that "[t]he charges posed by the Defendants violate the WVCCPA and, further, violate the limitations on charges for medical records as set forth in HIPPA, the HITECH Act, West Virginia statute and related state and federal regulations." Id. at ¶ 48. Notwithstanding the references in the amended complaint to violations of federal law, plaintiffs' claims are made only pursuant to West Virginia law.

Count Two alleges that defendants violated the Health Care Records Statute, W. Va. Code § 16-29-2, by charging plaintiffs and others in excess of their labor and supply costs for their electronic medical records, resulting in fees that are not reasonable. Id. at ¶¶ 50, 53. In addition, defendants did not inform consumers or their representatives that they are entitled to an electronic copy of their medical records at a lower cost, which plaintiffs allege constitutes "a failure to state a material fact that intends to mislead and violates West Virginia statute." Id. at ¶ 54.

Plaintiffs ask for this matter to be certified as a class action, award judgment in their favor, including injunctive relief that prohibits excessive and unlawful charges,

equitable relief that includes restitution and disgorgement of
moneys obtained from overcharges, recovery of excess charges,
civil penalties for violations of the WVCCPA, pre-judgment and
post-judgment interest, costs, attorneys fees, statutory
interest, punitive damages, and all other relief the court deems
appropriate.  <u>Id.</u> at p. 12.

In its motion to dismiss the amended complaint, MRO
concedes that it "provides release of information services to
health care providers, which includes providing copies of
medical records upon a proper request to the health care
provider."  MRO's Memo. in Supp. of Mot. to Compel Arbitration
and Dismiss Amended Compl. at 2.  Despite this, MRO argues that
plaintiffs have failed to plead a cognizable injury in fact and
additionally contends that the WVCCPA and Health Care Records
Statute do not cover plaintiffs' claims in part because their
requests were made by their attorney, so that they therefore
lack standing to bring their claims, pursuant to Fed. R. Civ. P.
12(b)(1).  <u>Id.</u>  MRO also argues that there is a valid, binding
arbitration provision that covers the dispute so that the court
must compel arbitration of this matter.[2]  <u>Id.</u>

---

[2] MRO's motion additionally argues that plaintiffs have failed to
state a claim under Rule 12(b)(6).  MRO's Rule 12(b)(6)

7

II.  Rule 12(b)(1) Lack of Subject Matter Jurisdiction

A. Governing Standard

Federal district courts are courts of limited subject matter jurisdiction, possessing "only the jurisdiction authorized them by the United States Constitution and by federal statute." United States ex. rel. Vuyyuru v. Jadhav, 555 F.3d 337, 347 (4th Cir. 2008).  As such, "there is no presumption that the court has jurisdiction." Pinkley, Inc. v. City of Frederick, 191 F.3d 394, 399 (4th Cir. 1999) (citing Lehigh Mining & Mfg. Co. v. Kelly, 160 U.S. 327, 327 (1895)).  Indeed, when the existence of subject matter jurisdiction is challenged under Rule 12(b)(1), "[t]he plaintiff has the burden of proving that subject matter jurisdiction exists." Evans v. B.F. Perkins Co., 166 F.3d 642, 647 (4th Cir. 1999); see also Richmond, Fredericksburg, & Potomac R .R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991).  If subject matter jurisdiction is lacking, the claim must be dismissed.  See Arbaugh v. Y & H Corp., 546 U.S. 500, 506 (2006).

Subject matter jurisdiction may be attacked by a

_____

arguments will be addressed in a separate memorandum opinion and order.

defendant with either a facial or a factual challenge.  <u>Kerns v.</u>
<u>United States</u>, 585 F.3d 188, 192 (4th Cir. 2009).  In a facial
challenge, the defendant is asserting that the allegations
contained in the complaint fail to sufficiently establish the
existence of subject matter jurisdiction.  <u>Id.</u>  In a facial
attack, the plaintiff is "afforded the same procedural
protection as she would receive under a Rule 12(b)(6)
consideration," so that "facts alleged in the complaint are
taken as true," and the defendant's motion "must be denied if
the complaint alleges sufficient facts to invoke subject matter
jurisdiction."  <u>Id.</u>  In a factual challenge, a defendant may
argue "that the jurisdictional allegations of the complaint
[are] not true."  <u>Id.</u>  This permits a trial court to consider
extrinsic evidence or hold an evidentiary hearing to "determine
if there are facts to support the jurisdictional allegations."
<u>Id.</u>

     MRO argues that plaintiffs lack standing to bring
their claims for two reasons.  First, it contends that because
the law firm Tiano O'Dell PLLC requested and paid for
plaintiffs' medical records, it is Tiano O'Dell, not plaintiffs
themselves, who suffered an injury from any alleged overbilling
by them.  MRO's Memo. in Supp. of Mot. to Compel Arbitration and

Dismiss Amended Compl. at 8-9.  Second, MRO states that the West

Virginia Consumer Credit and Protection Act ("WVCCPA") and the

Health Care Records Statute do not govern the transactions

alleged in the amended complaint.  Id. at 9-11.  As these are

facial and not factual challenges to plaintiffs' standing, the

court will accept all allegations in the amended complaint as

true and determine whether plaintiffs have sufficiently

established a basis for subject matter jurisdiction.  See Kerns,

585 F.3d at 192.


                          B. Applicable Law


        Standing is generally addressed at the motion to

dismiss stage under Fed. R. Civ. P. 12(b)(1) because "Article

III gives federal courts jurisdiction only over cases and

controversies and standing is a integral component of the case

or controversy requirement."  CGM, LLC v. BellSouth

Telecommunications, Inc., 664 F.3d 46, 52 (4th Cir. 2011)

(internal citations and quotations omitted).  "To satisfy the

constitutional standing requirement, a plaintiff must provide

evidence to support the conclusion that: (1) 'the plaintiff ...

suffered an injury in fact — an invasion of a legally protected

interest which is (a) concrete and particularized, and (b)

actual or imminent, not conjectural or hypothetical'; (2) 'there

[is] a causal connection between the injury and the conduct complained of'; and (3) 'it [is] likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'" White Tail Park, Inc. v. Stroube, 413 F.3d 451, 458 (4th Cir. 2005) (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-62 (1992).

At the motion to dismiss stage, "general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim." Lujan, 504 U.S. at 561. The court may accept as true allegations that are supported by adequate "'factual matter' to render them 'plausible on [their] face.'" Beck v. McDonald, 848 F.3d 262, 270 (4th Cir. 2017) (citing Ashcroft, 556 U.S. 662, 678 (2009). "The same presumption of truth" does not apply to "conclusory statements and legal conclusions" contained in the complaint. Id.

### C. Injury In Fact

MRO contends that because the amended complaint alleges that plaintiffs requested their medical records "through [their] representatives" and because Tiano O'Dell, not

11

plaintiffs, paid for plaintiffs' medical records, they have not suffered an injury in fact by their alleged overbilling. MRO's Memo. in Supp. of Mot. to Compel Arbitration and Dismiss Amended Compl. at 8-9. In support of the position that the amended complaint does not adequately allege an injury in fact, MRO cites to Spiro v. Healthport Technologies, LLC. 73 F. Supp. 3d 259 (S.D.N.Y. 2014). In Spiro, the court found that plaintiffs, who were individuals alleging that defendants overcharged them for their medical records under New York law, did not have standing to pursue their claims because as written, the complaint did not allege that plaintiffs were obligated to reimburse their attorney, who originally requested and paid for the records. Id. at 268. The court dismissed the case for lack of jurisdiction, expressly permitting plaintiffs to amend the complaint to state that under the fee agreement executed by plaintiffs with their attorney, they were obligated to reimburse the medical record fees charged by defendants. Id. at 269.

Plaintiffs argue that the subsequent Second Circuit case of Carter v. HealthPort Technologies, LLC, is more relevant to this case. 822 F.3d 47 (2d Cir. 2016). In Carter, plaintiffs similarly sued defendants, who they alleged overbilled them for their medical records in violation of state

12

law.  Id. at 52.  The complaint alleged that each plaintiff,
"through [her or his] counsel, . . . requested medical records
from" the treating hospital.  Id. at 52 (internal quotations
omitted).  The complaint further alleged that each plaintiff
paid the charge provided by defendants "though [his or her]
counsel."  Id.

        The Second Circuit determined that the district court
erred in finding that the plaintiffs lacked standing based on
the allegations contained in the complaint.  Id. at 58.  The
court found that the allegations that the plaintiffs requested
and paid for their medical records through his or her counsel
"are detailed factual allegations that the plaintiffs were the
principals, who acted through their agents in requesting and
paying for the records."  Id.  Combined with the factual
allegation that "the ultimate expense" for the records was borne
by "Plaintiffs and other Class members," the court found that
the complaint described the agency relationships between the
plaintiffs and their attorney so that each plaintiff acted
"through [his or her] counsel" in requesting and paying the fees
demanded in exchange for providing the medical records, and that
plaintiffs bore the "ultimate" expense.  Id.  Based on these
allegations, the court found that the complaint "sufficiently

alleged that it [was] the client[s] who w[ere] injured."  Id. at
58-59.

In the amended complaint, it is individually alleged
that each of the named plaintiffs "through [his or her]
representatives requested" his or her medical records.  Amended
Compl. at ¶¶ 27, 28.  It is further alleged "Plaintiff's counsel
received an invoice" from MRO.  Id.  For example, as to Mr.
Wilson, it is alleged that,

> On February 3, 2016, Thomas Wilson, Sr., through his
> representatives, requested a copy of his medical records in
> electronic form from Cabell Huntington Hospital.
> Plaintiff's counsel received an invoice from MRO dated
> March 7, 2016.  The charges exceed those permitted by law.

Id. at ¶ 27.  The amended complaint additionally states,
"Defendants have overcharged Plaintiffs and systematically
overcharge other patients who seek their protected health
information" and it characterizes the actions of defendants as a
"systematic assessment and collection of improper and excessive
charges that Plaintiffs and others paid for copies of personal
medical records."  Id. at ¶¶ 34, 1.

MRO included, as exhibits with its motion to dismiss,
an invoice that show that Tiano O'Dell requested and paid for
plaintiffs' medical records.  See Exhibits A-C to MRO's Motion

to Compel Arbitration and Dismiss the Amended Compl. These
documents support the claims in the amended complaint that
plaintiffs requested their medical records through their
representatives, persons at Tiano O'Dell, and that plaintiffs'
counsel received an invoice for each record request. The
invoice for Ms. Sheppard's medical records, which is attached to
the amended complaint, additionally shows that an employee of
Tiano O'Dell requested the medical records. See ECF Doc. Nos.
38-1. Because that which is contained in MRO's exhibits,
including an invoice for Mr. Wilson's medical records, does not
factually attack the allegations in the amended complaint, the
court may not consider evidence outside of the pleadings in
making the determination whether plaintiffs have adequately
alleged an injury in fact. See Kerns, 585 F.3d at 192.

When combined with the assertions in the amended
complaint that plaintiffs were overcharged by MRO and that
"plaintiffs and others paid for copies of personal medical
records," the complaint sufficiently alleges an agency
relationship whereby each plaintiff acted through their counsel
to request and pay for their medical records. See Carter, 822
F.3d at 58-59. Moreover, because the amended complaint states
that it was the plaintiffs who were overcharged for the records,

it sufficiently alleges that plaintiffs have or will ultimately bear the cost of the charges, as in <u>Carter</u>. <u>See</u> Amended Compl. at ¶¶ 1, 4, 26; <u>see</u> <u>also</u> <u>Carter</u>, 822 F.3d at 58. Accordingly, plaintiffs have adequately pled an injury in fact as a result of the alleged overbilling.

While not raised as an argument by MRO, a recent 3-2 decision by the West Virginia Supreme Court of Appeals in <u>State of West Virginia, ex rel. Healthport Technologies, LLC v. Stucky</u>, found that the plaintiff, who alleged that providers of health care records charged him in excess of costs permitted under the Health Care Records Statute, did not have standing under the West Virginia Constitution to bring his claim. 2017 WL 232876, ___ S.E.2d ___, (May 24, 2017). According to the court, because the plaintiff's law firm requested and paid for his medical records, only "the law firm has sustained a direct pocketbook injury." <u>Id.</u> at 5. Although the plaintiff had a fee arrangement with the law firm whereby the plaintiff was required to reimburse the law firm for the cost of the medical records only if successful in his lawsuit, the majority concluded that until the plaintiff "become[s] contractually liable to his lawyers for this allegedly unlawful expense . . . his loss is contingent and conjectural." <u>Id.</u>

Unlike in <u>Healthport</u>, here the amended complaint alleges that "plaintiffs and others paid for copies of personal medical records" and that plaintiffs were overcharged for the records. Amended Compl. ¶¶ 1, 35. Plaintiffs provided copies of the fee agreements executed between themselves and Tiano O'Dell which states, in pertinent part,

> 4. Client shall be responsible to pay all costs and expenses incurred in and about the institution and prosecution of said suit or claim, which said costs and expenses are in addition to the compensation or legal fees set forth in Paragraph 1.a. through 1.d. and shall be deducted after the contingency fee is calculated.
>
> 5. Attorneys are hereby authorized to advance costs and expenses which client agrees to repay promptly upon request by Attorneys.

<u>See</u> Exhibit 12 to Pls.' Resp. to MRO; <u>see also</u> Pls.' Resp. to MRO at 4-5; 10. According to the agreement, although Tiano O'Dell may advance the costs of litigation to plaintiffs, plaintiffs agree to repay those costs. <u>See id.</u> MRO has provided no documentation that challenges plaintiffs' assertion that they are contractually liable to reimburse Tiano O'Dell for the costs of their medical records.

Because it can be inferred from the amended complaint that plaintiffs themselves bore or will ultimately bear the cost of the medical records that were paid through Tiano O'Dell, and

there being no acceptable evidence presented to the contrary, the court finds plaintiffs have adequately alleged a present injury resulting from MRO's conduct so that they have suffered an injury in fact for Article III standing purposes.[3]

D. Plaintiffs' Claims Governed by the Relevant Statutes

1. West Virginia Consumer Credit and Protection Act

MRO insists that plaintiffs may not bring a claim under the WVCCPA because persons at Tiano O'Dell requested plaintiffs' medical records on their behalf for the purposes of initiating litigation, which, it says, is not a consumer transaction as defined in the WVCCAP. MRO's Memo. in Supp. of Mot. to Compel Arbitration and Dismiss Amended Compl. at 9-10. MRO cites to <u>Any Occasion, LLC and Janice Hicks v. Florists' Transworld Delivery, Inc.</u>, for the proposition that only natural persons engaged in consumer transactions may file a claim for unfair and deceptive acts and practices under section 46A-6-

_____

[3] In the memorandum opinion and order entered in this case on April 27, 2017 that denied Medi-Copy's motion to dismiss for lack of standing, the court found that plaintiffs had adequately alleged an injury in fact as to Medi-Copy because, although Tiano O'Dell paid for plaintiffs' medical records, plaintiffs had reimbursed the law firm for the records after the conclusion of the litigation in their medical malpractice claims. <u>See</u> 2017 WL 1534202 at 6.

106(a).  No. 5:10-44, 2010 WL 3584411 (N.D.W.Va. Sept. 13, 2010); MRO's Memo. in Supp. of Mot. to Compel Arbitration and Dismiss Amended Compl. at 9.  As noted below, the language of section 46A-6-106(a) does not support this argument.

Plaintiffs claim that defendants' actions in overcharging them for their medical records and failing to inform them that they were statutorily obligated to provide the records at a lower cost constitutes unlawful acts or practices under 46A-6-104 of the West Virginia Consumer Credit and Protection Act.  Amended Compl. at ¶¶ 42-48.  Because a plaintiff alleging a violation of this provision need not be a consumer or engaged in consumer transactions, the court need not reach the question of whether requesting medical records for potential litigation constitutes a consumer transaction under the WVCCPA.

W. Va. Code § 46A-6-104 states, "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." W. Va. Code § 46A-6-104.  Section 46A-6-106 provides that ". . . any <u>person</u> who purchases . . . goods or services and thereby suffers an ascertainable loss of money . . . as a result of the use or employment by another person of a method, act or practice

prohibited or declared to be unlawful by the provisions of this article may bring an action in [] circuit court. . . ."  W. Va. Code § 46A-6-106(a) (emphasis added).  "Person," as defined in section 46A-1-102(31) includes "a natural person or an individual, and an organization."  W. Va. Code § 46A-1-102(31).  Nowhere in these provisions does it state that only consumers may bring such claims or that they must involve consumer transactions.[4]  See generally section 46A-6-106 (referring to one with a private cause of action as "a person" and "the person").

While a previous version of section 46A-6-106 included references to "consumer," section 46A-6-106(a) has always stated that "[a]ny person" has a cause of action under this provision. The new version of section 46A-6-106 became effective on June 12, 2015, and replaced all references to "consumer" with "person," making it uniform with section 46A-6-106(a).  See

---

[4] MRO's assertion that plaintiffs must be involved in consumer transactions in order to state a claim under section 46A-6-104 is rooted in the definition of "consumer" which is defined for purposes of this provision as "a natural person to whom a sale or lease is made in a consumer transaction."  W. Va. Code § 46A-6-102(2).  "Consumer transaction" is further defined as "a sale or lease to a natural person or persons for a personal, family, household or agricultural purpose."  Id.  Because, as discussed below, "consumer" does not appear in the text of section 46A-6-104(a), plaintiffs need not be involved in consumer transactions in order to bring a claim under this provision.

20

_Midwestern Midget Football Club Inc. v. Riddell, Inc._, No. 2:15-00244, 2015 WL 4727438 (S.D.W.Va. Aug. 10, 2015) (detailing the 2015 changes to section 46A-6-106 and concluding that under the previous version of the provision that a plaintiff need only be a person and not a consumer to bring a claim). Inasmuch as plaintiffs, as natural persons, are plainly persons, they satisfy the standing requirement regardless of whether they are consumers or were engaged in consumer transactions in requesting their medical records through Tiano O'Dell.

## 2. Health Care Records Statute

MRO next claims that the Health Care Records Statute does not govern Count Two of plaintiffs' amended complaint because persons at Tiano O'Dell, and not the plaintiffs themselves, requested and paid for the medical records that defendants allegedly overbilled. MRO's Memo. in Supp. of Mot. to Dismiss Amended Compl. at 9. According to MRO, because Tiano O'Dell, a third party, requested the records, "the pricing scheme in the Health Care Records Statute is inapplicable." Id.

Plaintiffs respond that Tiano O'Dell, the law firm representing them and Mr. O'Dell as their attorney, qualify as "authorized agents" or "authorized representatives" under the

statute and thus were permitted to request medical records on their behalf.  Pls.' Resp. to MRO at 6.  In reply, while asserting that Tiano O'Dell is not an authorized representative under the Health Care Record Statute based upon the definition of "authorized representative" contained in federal regulations, MRO does not address plaintiffs' argument that an attorney requesting medical records on behalf of his clients is an authorized agent under the statute.  MRO's Reply at 4.

As earlier noted, the Health Care Records Statute, contained in W. Va. Code §§ 16-29-1 and 16-29-2, states that "[a]ny licensed . . . health care provider . . . shall, upon the written request of a patient, his or her authorized agent or authorized representative, within a reasonable time, furnish a copy . . . of all or a portion of the patient's record to the patient, his or her authorized agent or authorized representative. . . ."  W. Va. Code § 16-29-1(a).  Section 16-29-1(d) states that [t]he provisions of this article may be enforced by a patient, authorized agent or authorized representative. . . ."  W. Va. Code § 16-29-1(d).

"Authorized agent" is not defined within the Health Care Records Statute.  An agent is "[s]omeone who is authorized to act for or in place of another; a representative."  AGENT,

Black's Law Dictionary (10th ed. 2014). In response to the
motion to dismiss, plaintiffs provided copies of the requests
for medical records sent to MRO, which include an "Authorization
to Disclose Health Information" signed by plaintiffs,
authorizing their medical records to be provided to Tiano
O'Dell. Exhibits 1-10 to Pls.' Resp. to MRO.[5] As previously
discussed, the amended complaint adequately alleges that
plaintiffs suffered an injury in fact by requesting and paying
for copies of their medical records through their agent, the law
firm Tiano O'Dell. <u>See</u> Amended Compl. at ¶¶ 31, 32. Attorneys
at Tiano O'Dell, who were authorized by plaintiffs to obtain
their medical records and who were acting on their behalf for
the purposes of instituting legal proceedings, qualify as
plaintiffs' authorized agents. Accordingly, the court finds
that the Health Care Records Statute applies to plaintiffs'

---

[5] Although the documents which plaintiffs cite in their response
to the motion to dismiss were not attached as exhibits in their
amended complaint, the court has already determined that it can
be inferred from the complaint that lawyers at Tiano O'Dell were
acting as agents to request medical records for plaintiffs,
clients of Tiano O'Dell. Furthermore, as plaintiffs note, under
federal health care privacy laws, a member of Tiano O'Dell would
not be permitted to access plaintiffs' medical records without
authorizations from plaintiffs. MRO is unable to explain how a
representative of Tiano O'Dell would have access to plaintiffs'
medical records as a "third-party requester" without this
requisite authorization.

claims.

E. Summary

To summarize, the amended complaint sufficiently
alleges that plaintiffs, acting through their attorneys at Tiano
O'Dell in requesting and paying for their medical records,
suffered an injury in fact that is concrete and particularized
and actual or imminent, whereby MRO overcharged them for copies
of their medical records in violation of West Virginia law.  The
amended complaint also alleges a causal connection between MRO's
overcharging and the injury suffered by plaintiffs.  From the
amended complaint it is additionally apparent that it is likely
that the economic injury suffered by plaintiffs can be redressed
by a favorable decision by the court.  Moreover, plaintiffs'
claims are covered under the WVCCAP and Health Care Records
Statute.  Accordingly, the amended complaint sufficiently
establishes plaintiffs' standing to bring the claims alleged in
the amended complaint.

### III. MRO's Motion to Compel Arbitration

MRO next contends that a valid, binding arbitration
agreement covers this dispute so that this court must compel

arbitration of the matter.  MRO's Memo. in Supp. of Mot. to
Compel Arbitration and Dismiss Amended Compl. at 12.  Indeed,
the bottom of the invoice for Mr. Wilson and Ms. Sheppard's
medical records from MRO states:

> By paying this invoice, you are representing that
> you have reviewed and approved the charges and
> have agreed to pay them.  Any dispute related to
> paying this invoice must be presented before paying
> this invoice.  Any dispute not so presented is waived.
> All disputes must be resolved by arbitration under the
> Federal Arbitration Act through one or more neutral
> arbitrators before the American Arbitration
> Association.  Class arbitrations are not permitted.
> Disputes must be brought only in the claimant's
> individual capacity and not as a representative of a
> member or class.  An arbitrator may not consolidate
> more than one person's claims nor preside over any
> form of class proceedings.

Exhibits A-B to MRO's Mot. to Compel Arbitration and Dismiss
Amended Compl.

Plaintiffs do not dispute that the arbitration
agreement was included in the invoices for copies of Mr.
Wilson's and Ms. Sheppard's medical records, but instead argue
that the arbitration agreement is unenforceable for multiple
reasons.  Id. at 12.

25

## A. Applicable Law

The Federal Arbitration Act ("FAA") was enacted in 1925 and codified as Title 9 of the United States Code in 1947. Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 25 (1991). Its purpose was to "reverse the longstanding judicial hostility to arbitration agreements . . . and to place [them on] the same footing as other contracts." Id. The FAA provides that arbitration clauses in contracts concerning interstate commerce are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2 (2012). The FAA reflects "a liberal federal policy favoring arbitration agreements." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983). "Accordingly, due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration." Adkins v. Labor Ready, Inc., 303 F.3d 496, 500 (4th Cir. 2002) (internal citations and quotations omitted). Thus, a district court must grant a motion to compel arbitration when "a valid arbitration agreement exists and the issues in a case fall within its purview." Id. (citing United States v. Bankers Ins. Co., 245 F.3d 315, 319 (4th Cir. 2001)).

In this circuit, a party may compel arbitration under the FAA if it can demonstrate:

> (1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of [a party] to arbitrate the dispute.

Id. at 500-01 (internal citations and quotations omitted).

Plaintiffs do not contest that the invoice for copies of their medical records contained an arbitration agreement. Instead, they argue that it is unenforceable because there is no consideration for the arbitration agreement and it is additionally unconscionable. Pls' Resp. to MRO at 12.[6]

MRO contends that the arbitration provision is voluntary because "[t]here is nothing to prevent any MRO customer from indicating a refusal to agree to the arbitration provision, including through a telephone call, or . . . by seeking a court order requiring their production without

_____

[6] Plaintiffs also argue that MRO is not a party to the contract containing the arbitration agreement because Medical Records Online, Inc., and not MRO is requesting to arbitrate the dispute. Pls' Resp. to MRO at 13. Inasmuch as it appears, as MRO asserts, that Medical Records Online, Inc. is a "doing business as" name for MRO, the court finds that this argument is without merit.

objectionable conditions." MRO Reply at 7. MRO further asserts that there is adequate consideration to enforce the arbitration provision because of its mutuality and contends that it is not unconscionable. MRO's Reply at 7-9.

Arbitration agreements are a matter of contract and are controlled by contract law. See <u>Arnold v. United Companies Lending Corp.</u>, 204 W. Va. 229, 511 S.E.2d 854 (1998). To determine whether the parties formed a valid arbitration agreement, a court looks to the state law that normally governs the formation of contracts. 9 U.S.C. § 2; <u>First Options of Chicago, Inc. v. Kaplan</u>, 514 U.S. 938, 943 (1995). "However, while applying state contract law, the court is nonetheless to give 'due regard . . . to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself must be resolved in favor of arbitration.'" <u>Adkins v. Labor Ready, Inc.</u>, 185 F. Supp. 2d 628, 636 (S.D. W.Va. 2001) (quoting <u>Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University</u>, 489 U.S. 468, 476 (1989). In the present matter, because the transaction apparently took place in West Virginia, the court looks to West Virginia contract law.

"Generally applicable contract defenses — such as

laches, estoppel, waiver, fraud, duress, or unconscionability —
may be applied to invalidate an arbitration agreement."
Syllabus Point 9, <u>Brown v. Genesis Healthcare Corp.</u> (<u>Brown I</u>),
724 S.E.2d 250, 261, 228 W. Va. 646, 657 (2011), overruled in
part on other grounds sub nom. <u>Marmet Health Care Center v.
Brown</u>, 132 S. Ct. 1201 (2012).  "The general tools for examining
contracts are familiar to any first-year law student: ambiguity,
coercion, duress, estoppel, fraud, impracticality, laches, lack
of capacity, misrepresentation, mistake, mutuality of assent,
unconscionability, undue influence, waiver, or even lack of
offer, acceptance or consideration.  If the contract defense
exists under general state contract law principles, then it may
be asserted to counter the claim that an arbitration agreement
or a provision therein binds the parties."  <u>Schumacher Homes of
Circleville, Inc. v. Spencer</u>, 237 W. Va. 379, 391–92, 787 S.E.2d
650, 662–63 (2016).


### B. Consideration


        Plaintiffs assert that because MRO was required under
law to provide their medical records for a reasonable fee, this
pre-existing duty does not establish consideration for the
arbitration agreement.  Pls.' Resp. to MRO at 12.  MRO responds
that because the arbitration clause provides a mutual obligation

to arbitrate "all claims," this is adequate consideration for the arbitration provision.  MRO Reply at 8-9.

Consideration is "some right, interest, profit, or benefit accruing to one party, or some forbearance, detriment, loss, or responsibility given, suffered, or undertaken by another.  A benefit to the promisor or a detriment to the promisee is sufficient consideration for a contract."  State ex rel. Saylor v. Wilkes, 216 W.Va. 76, 775, 613 S.E.2d 914, 923 (2005) (internal citations and quotations omitted).

However, an agreement by a party to do that which he is already obligated to do is not valid consideration.  See Restatement (Second) of Contracts, § 73 (1981) ("Performance of a legal duty owed to a promisee which is neither doubtful nor the subject of honest dispute is not consideration."); see also Syllabus Point 1, Cole v. George, 86 W. Va. 346, 103 S.E. 201 (1920) ("An agreement by one to do what he is already legally bound to do is not good consideration for a promise made to him.").

Under the Health Care Records Statute, "upon the written request of" a patient, his or her authorized agent, or authorized representative, has the right to obtain, "within a

reasonable time," the patient's medical records, subject to certain enumerated exceptions. See W. Va. Code § 16-29-1. While the person requesting the records must "pay a reasonable, cost-based fee, at the time of delivery," nothing within the statute allows the hospital or a third-party provider to obtain anything other than a reasonable fee as consideration for providing the records.

In support of their contention that the arbitration agreement lacks consideration, plaintiffs cite to Bernetich, Hatzell & Pascu, LLC v. Medical Records Online, Inc. 445 N.J. Super. 173, 136 A.3d 955 (App. Div. 2016), cert. denied, 227 N.J. 245, 151 A.3d 85 (Table) (2016). In that case, plaintiff, a law firm, requested medical records from a hospital for a prospective client who authorized the firm to obtain medical records on his behalf. Id. at 177. MRO, the same defendant in this case, sent the law firm an invoice for copies of the plaintiff's medical records. Id. The invoice stated prepayment was required for the records to be released, that payment "would constitute approval of the charges and the invoice" and if the law firm disputed the invoice, it was required to arbitrate first. Id. The invoice included an arbitration provision that is identical to the one at issue in this case. See id. The law

firm sued, claiming that the fee charged by MRO exceeded the costs allowable under New Jersey law.  <u>Id.</u> at 178.  Because the law firm "had a pre-existing right to have the records for a cost-based fee," the court found that "it [did] not 'get something' out of the alleged agreement to arbitrate that it did not already have."  <u>Id.</u> at 183-84.  Further, in exchange for assent to the arbitration provision, "MRO did not promise [the law firm] anything it was not already obliged to provide."  <u>Id.</u> at 184.  The court concluded that because MRO had a pre-existing duty that arose "from statute and regulation" to "provide medical records upon the request of 'a patient or the patient's legally authorized representative' or anyone else whom the patient has authorized," the arbitration agreement lacked consideration and was unenforceable.  <u>Id.</u>

In determining that the arbitration provision lacked consideration, the court expressly stated, "MRO contended in oral argument that the medical records constituted consideration for [plaintiff's] alleged promise to arbitrate."  <u>Id.</u> at 962.  In this case, MRO instead argues that adequate consideration exists because the agreement requires both parties to arbitrate any dispute they have regarding medical records.  MRO's Reply at 8-9.

Under West Virginia law, a mutual obligation to arbitrate their claims ordinarily constitutes adequate consideration for an arbitration agreement,  see Adkins, 303 F.3d at 501 (finding that "no consideration is required above and beyond [a mutual] agreement to be bound by the arbitration process") (internal quotations omitted); see also Johnson v. Circuit City Stores, Inc., 148 F.3d 373, 378-79 (4th Cir. 1998) (finding adequate consideration when "both parties . . . agreed to be bound by the arbitration process for the resolution of any claim required to be submitted to arbitration under the Dispute Resolution Agreement.").  In this instance, however, the arbitration agreement lacks consideration.  As in Bernetich, Hatzell & Pascu, LLC, in gaining plaintiffs' assent to the arbitration provision, MRO did not provide plaintiffs anything more than it was already legally obligated to provide.  Under the Health Care Records Statute, MRO, as an agent of Cabell Huntington Hospital, was required to provide copies of plaintiffs' medical records for a reasonable cost-based fee, to be paid at the time of delivery.  Instead of doing what was required under West Virginia law, MRO required prepayment for the copies, which it contends constitutes voluntary assent to the arbitration provision.  However, in gaining plaintiffs' purported assent to the arbitration provision, plaintiffs

through Tiano O'Dell only paid for the copies of the records they were already entitled to receive.  Because plaintiffs had a pre-existing right to receive the records for a reasonable cost-based fee, they did not "get something" out of the agreement to arbitrate that they did not already have.  In addition, MRO did not promise anything to plaintiffs it was not already obliged to provide in gaining their assent to the agreement.  <u>See</u> <u>Bernetich, Hatzell & Pascu, LLC</u>, 445 N.J. Super. at 183. Because plaintiffs get no "right, interest, profit, or benefit" from the arbitration agreement and MRO suffers no "forbearance, detriment, loss, or responsibility," as a result of it, the mutual agreement to arbitrate does not constitute valid consideration for the agreement.  <u>See</u> <u>State ex rel. Saylor</u>, 216 W.Va. at 775, 613 S.E.2d at 923 (internal citations and quotations omitted).

        MRO's contention that the arbitration provision was voluntary and that nothing "prevent[s] any MRO customer from indicating a refusal to agree to the arbitration provision, including through a telephone call" additionally is without merit.  MRO's Reply at 7.  The arbitration provision in no way indicates that it is voluntary and that a person may decline to arbitrate their claims and still receive copies of their medical

**34**

records.  That the bottom of the invoice states "Please contact MRO at 888-252-4146 for any questions regarding this invoice" does not change this analysis.  The invoice does not state that a requester can call to voice objections to the arbitration provision, "[n]or would it be reasonable for the reader to conclude that the invitation to pose questions indicated a willingness to deviate from the emphatic statement, 'prepayment required,' placed at the very top of the invoice, or any other of its terms."  See Bernetich, Hatzell & Pascu, LLC, 445 N.J. Super. at 185-86.

The involuntariness of the arbitration provision is further evidenced by the submissions of plaintiffs.  Before paying the invoice for Mr. Wilson's records, Mr. Tiano wrote to MRO stating that the fee for Mr. Wilson's records violated West Virginia law.  See Exhibit 4 to Pls.' Resp. to MRO.  In response to Mr. Tiano, Ms. Goldstein stated that the fees charged for Mr. Wilson's records were not in excess of West Virginia law, and further stated that the CD containing the records would not be mailed to Mr. O'Dell until he paid "the balance due on the invoice."  See Exhibit 5 to Pls.' Resp. to MRO.  Despite MRO's knowledge of the dispute, Mr. O'Dell was still required to pay the fee in order to gain access to Mr. Wilson's medical records.

In addition, after becoming aware of the dispute, Ms. Goldstein did not make Mr. Wilson or his counsel aware that he could avoid arbitration of the dispute by refusing to agree to the arbitration agreement before paying the invoice.

Moreover, MRO, as an agent of Cabell Huntington Hospital fulfilling the hospital's duty under the Health Care Records Statute, could not require a requester of records to do more than Cabell Huntington Hospital could require a requester of records to do. Under the Health Care Records Statute, a health care provider may only impose a reasonable cost-based fee in exchange for copies of medical records. Because W. Va. Code § 16-29-2 does not state that Cabell Huntington Hospital, a health care provider, can require anything other than a cost-based fee in exchange for the records, neither can MRO, its agent, require anything of a requester than a cost-based fee, paid at the time of delivery. See W. Va. Code §§ 16-29-1, 16-29-2. To permit otherwise would contravene the text and the purpose of the Health Care Records Statute.

MRO is simply attempting to enforce arbitration on its customers when it lacks any right to do so. Accordingly, because the arbitration provision lacks consideration and because MRO, as an agent of Cabell Huntington Hospital, is not

permitted to require anything of a requester for medical records other than that which is contained in W. Va. Code §§ 16-29-1 and 16-29-2, the arbitration provision is unenforceable. <u>See</u> <u>Chesapeake Appalachia, L.L.C.</u>, 236 W. Va. at 435, 781 S.E.2d at 212. Inasmuch as the arbitration provision is unenforceable for these reasons, the court need not decide whether it is also unconscionable.

IV.    Conclusion

For the foregoing reasons, it is ORDERED that MRO's motion to dismiss the amended complaint pursuant to Rule 12(b)(1) and to compel arbitration be, and it hereby is, denied.

The Clerk is directed to transmit copies of this order to counsel of record and any unrepresented parties.

DATED:   June 15, 2017

John T. Copenhaver, Jr.
United States District Judge